# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER DURAN HEAD,

Defendant-Appellant.

FOR PUBLICATION
March 27, 2018
9:15 a.m.

No. 334255
Wayne Circuit Court
LC No. 15-010037-01-FC

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of involuntary manslaughter, MCL 750.321, second-degree child abuse, MCL 750.136b(3), felon in possession of a firearm, MCL 750.224f, possession of a short-barreled shotgun, MCL 750.224b, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a fourth-habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for the involuntary manslaughter conviction, 10 to 50 years' imprisonment for the second-degree child abuse conviction, 5 to 50 years' imprisonment each for the felon in possession of a firearm and possession of a short-barreled shotgun convictions, and two years' imprisonment for the felony-firearm conviction. We affirm.

This case arises out of the fatal shooting of defendant's nine-year-old son, DH, by defendant's 10-year-old daughter, TH, on November 9, 2015, in defendant's home. The involuntary manslaughter charge against defendant was premised on his gross negligence in storing a loaded, short-barreled shotgun in a readily accessible location in his home where he allowed his children to play while unsupervised by an adult.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his convictions of involuntary manslaughter and second-degree child abuse. We disagree.

To determine whether there was sufficient evidence to support a conviction, this Court reviews the evidence de novo, in the light most favorable to the prosecutor, to determine whether a rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt. *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007).

-1-

"This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

"Manslaughter is murder without malice." *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003). "The common law recognizes two forms of manslaughter: voluntary and involuntary." *Id*. at 535. Involuntary manslaughter is a catch-all crime that encompasses all homicides that do not constitute murder, voluntary manslaughter, or a justified or excused homicide. *People v Holtschlag*, 471 Mich 1, 7; 684 NW2d 730 (2004). The requisite mental state for the type of involuntary manslaughter charged in this case is gross negligence. See *id*. at 16-17. Gross negligence means wantonness and disregard of the consequences that may ensue. *People v Feezel*, 486 Mich 184, 195; 783 NW2d 67 (2010). Wantonness exists when the defendant is aware of the risks but indifferent to the results; it constitutes a higher degree of culpability than recklessness. *Id*. at 196. To prove gross negligence, a prosecutor must show:

> (1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

> (2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

> (3) The omission [i.e., failure] to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*People v McCoy*, 223 Mich App 500, 503; 566 NW2d 667 (1997) (citation omitted).]

Causation is an element of involuntary manslaughter. *People v Tims*, 449 Mich 83, 94; 534 NW2d 675 (1995). Causation in the criminal context requires proof of factual causation and proximate causation. *Feezel*, 486 Mich at 194. "Factual causation exists if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred." *Id*. at 194-195. Proximate causation, on the other hand,

> is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural. If the finder of fact determines that an intervening cause supersedes a defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken, proximate cause is lacking and criminal liability cannot be imposed. Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability. [*Id*. at 195 (quotation marks and citations omitted).]

Defendant argues that there was insufficient evidence of gross negligence in connection with his involuntary manslaughter conviction. We disagree. The evidence demonstrates that defendant kept an illegal, loaded, short-barreled shotgun in an unlocked closet in his bedroom. He allowed his children to spend time in that bedroom while unsupervised. In particular,

defendant allowed his nine-year-old son DH to play a violent video game in that bedroom while unsupervised. Defendant's 10-year-old daughter TH likewise had unsupervised access to defendant's bedroom and entered that bedroom while DH was playing the video game. TH then suggested that she and DH act out the video game. She retrieved the loaded shotgun from the closet and accidentally fired the gun, which led to DH's death. A rational trier of fact could find that defendant acted with gross negligence in allowing his children to have unsupervised access to a loaded shotgun. Defendant knew the situation required the exercise of ordinary care and diligence to avert injury. It goes without saying that a loaded shotgun poses a danger to young children who are not being monitored by an adult. Defendant had the ability to avoid the harm by ordinary care and diligence. Setting aside the fact that it was illegal for him to possess the weapon, as he was a convicted felon, and the fact that the weapon itself was an illegal short-barreled shotgun, defendant could have taken other actions—short of giving up his illegal possession of the gun—to avoid the harm, such as removing the ammunition from the weapon or placing it in a secure location where his children would not have had access to it. By allowing his young children to play unsupervised in a room where he kept a loaded, readily accessible shotgun, defendant failed to use the requisite care and diligence; he failed to avert a threatened danger where the result was likely to prove disastrous to his children. Therefore, we conclude that there was sufficient evidence of gross negligence.

Defendant's challenge to the causation element is equally devoid of merit. It is beyond question that factual causation exists. But for defendant keeping a loaded shotgun in an unlocked closet of the bedroom where the children were playing without supervision, TH could not have obtained the weapon and accidentally shot DH. Proximate causation likewise exists. The result of defendant's conduct was not remote or unnatural. A child dying from an accidental gunshot is exactly the type of harm that is to be expected from defendant's conduct of keeping a loaded weapon readily accessible in a room where young children were playing. Nor does TH's action of obtaining the weapon and accidentally firing it constitute an intervening cause that superseded defendant's conduct. Rather, TH's actions were reasonably foreseeable. Given that young children fail to appreciate the risks posed by loaded firearms in the same way that adults should, it is foreseeable that a child could accidentally fire a loaded weapon that was readily accessible in a room where the child was playing without supervision. Although some testimony suggested that defendant told the children not to touch the weapon or to go into the closet and that TH was ordinarily an obedient child, it is far from uncommon for a 10-year-old child to fail to comply with a parent's instructions, and it was for the trier of fact to assess the weight of the evidence and the credibility of witnesses. *Kanaan*, 278 Mich App at 619. Accordingly, there was sufficient evidence of causation regarding involuntary manslaughter.

There also was sufficient evidence of second-degree child abuse. Under MCL 750.136b(3), a person is guilty of second-degree child abuse if any of the following apply:

(a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

(b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.

(c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results.

This Court has recently explained:

> To establish second-degree child abuse based on a reckless act, the prosecution must prove that a defendant (1) was a parent or a guardian of the child or had care or authority over the child; (2) that he or she committed a reckless act, (3) that as a result, the child suffered serious physical harm; and (4) that the child was under 18 years old at the time. Generally a determination of whether an act is reckless is a jury question. [*People v Murphy*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 331620); slip op at 3 (citation omitted).]

Defendant does not challenge the first and fourth elements, i.e., it is undisputed that defendant was DH's father and that DH was under 18 years old. The second element is satisfied because there was evidence that defendant committed a reckless act. "[I]n order to constitute a 'reckless act' under the statute, the defendant must do something and do it recklessly. Simply failing to take an action does not constitute an act." *Id*. Defendant committed reckless acts by storing a loaded, short-barreled shotgun in his unlocked bedroom closet and then allowing his children to play in the room while unsupervised. Contrary to defendant's argument, the present case is nothing like *Murphy*, in which this Court held that the prosecutor presented no evidence of an affirmative act by the defendant that led to the child's death but instead presented evidence only of the defendant's inaction, i.e., failing to clean her house to ensure that morphine pills were not in reach of the child. *Id*. The key evidence here consisted not only of defendant's inaction but of his *affirmative* acts of storing a loaded shotgun in an unlocked closet of defendant's bedroom and allowing his children to play in that bedroom while unsupervised. Moreover, defendant knowingly and intentionally committed an act that was likely to cause serious physical harm to a child because defendant stored a loaded illegal short-barreled shotgun in a readily accessible location where he allowed his young children to play while unsupervised. Finally, the third element is satisfied because DH died from a gunshot wound to the head and causation was established for the reasons discussed earlier with respect to the involuntary manslaughter charge.

## II. JURY INSTRUCTIONS

Defendant next argues that the trial court's jury instruction on involuntary manslaughter was erroneous. However, defense counsel affirmatively approved of the trial court's instructions. By expressly approving the jury instructions, defendant waived review of the alleged instructional error. See *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011). Waiver extinguishes any error, meaning that there is no error to review. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000).

Even assuming the instructional issue was not waived, defendant's argument would still lack merit. The issue is unpreserved because defendant did not object to the jury instruction. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Unpreserved issues are reviewed for plain error affecting a defendant's substantial rights. *Kowalski*, 489 Mich at 505, citing *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). "Jury instructions must clearly present the case and the applicable law to the jury. The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005) (citation omitted). "[A]n imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Kowalski*, 489 Mich at 501-502.

Defendant contends that the trial court essentially directed the jury to enter a verdict of guilty when the court stated or implied that defendant was the cause of DH's death. Defendant is mistaken. At the beginning of its instruction on involuntary manslaughter, the trial court explicitly stated that the prosecutor was required to prove beyond a reasonable doubt the elements that the trial court then stated. In listing the causation element, the trial court followed M Crim JI 16.10 by reciting the alleged acts that the prosecutor had charged caused DH's death. The instruction did not in any manner direct a verdict on the issue of causation; the trial court did not state or imply that defendant's act had caused the death. On the contrary, the trial court plainly stated at the outset that the prosecutor was required to prove beyond a reasonable doubt the elements that the trial court then listed, including the element of causation.

Moreover, at trial, neither of the parties took the instructions to mean what defendant now argues they meant—that the prosecution was thereby relieved of the burden of proving causation for DH's death. Defendant's attorney argued during closing arguments, after the involuntary manslaughter instruction was read to the jury, that the evidence showed that DH died as a result of a "terrible accident," which defendant did not cause. On the other side, the prosecutor argued that the evidence proved that defendant caused DH's death; he did not mention or imply that the jury could simply assume causation or that the instruction relieved him of the burden of proving causation. Thus, defendant's contention that the trial court erred in instructing the jury on involuntary manslaughter is devoid of merit.

Defendant's related claim of ineffective assistance of counsel is likewise meritless. Defendant failed to preserve this issue by moving in the trial court for a new trial or an evidentiary hearing. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). This Court's review of the issue is thus limited to mistakes that are apparent from the record. *Id*. Whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *Id*. Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014). Defendant claims that defense counsel was ineffective for failing to object to the involuntary manslaughter

instruction. As discussed, however, the involuntary manslaughter instruction was not erroneous. Hence, defense counsel was not ineffective for failing to make a meritless or futile objection. *Id*.

## III. ADMISSION OF PHOTOGRAPHS

Defendant next argues that the trial court abused its discretion in admitting gruesome photographs. We disagree. "A decision whether to admit photographs is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009).

Relevant evidence is generally admissible. MRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

At trial, defendant objected to the photographs on the basis of MRE 403. The trial court overruled the objection, stating that although the evidence may be prejudicial, the prejudicial nature of the evidence did not substantially outweigh its relevancy, i.e., its probative value.

"In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving 'the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.' " *United States v Moore*, 917 F2d 215, 233 (CA 6, 1990) (citations omitted).[1] "[T]he draftsmen intended that the trial judge be given very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that the trial judge should not be reversed simply because an appellate court believes it would have decided the matter otherwise." *Id.* (citation, brackets, and some quotation marks omitted).

We find no abuse of discretion by the trial court. All relevant evidence is prejudicial to some extent. Exclusion is required under MRE 403 only when the danger of unfair prejudice substantially outweighs the probative value of the evidence. See *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Thus, "[p]hotographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403." *Gayheart*, 285 Mich App at 227, citing *People v Unger*, 278 Mich App 210, 257; 749 NW2d 272 (2008). Consequently,

---

[1] The opinions of lower federal courts are not binding on this Court, but such opinions may be considered for their persuasive value. See *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). Reliance on federal authority is particularly appropriate here, as the text of FRE 403 and MRE 403 are identical.

photographs that are merely calculated to arouse the sympathies or prejudices of the jury should not be admitted. However, if a photograph is otherwise admissible for a proper purpose, it is not rendered inadmissible merely because it brings vividly to the jurors the details of a gruesome or shocking accident or crime. [*People v Howard*, 226 Mich App 528, 549-550; 575 NW2d 16 (1997), citing *Mills*, 450 Mich at 76.]

Photographs may be used to corroborate a witness's testimony, and gruesomeness alone need not cause exclusion. *Unger*, 278 Mich App at 257, citing *Mills*, 450 Mich at 76. Photographs depicting the nature and extent of a victim's injuries may be probative of the defendant's mental state. *Gayheart*, 285 Mich App at 227. Photographs also may be admitted to explain or corroborate testimony about the cause of the victim's death. *Id.*

As in *Gayheart*, the photographs admitted in this case corroborated testimony regarding the cause of the victim's death and the nature and extent of his fatal injuries. See *id.* In addition, the photographs were helpful in establishing the mental state that the prosecutor was required to prove for some of the offenses. The nature and extent of DH's injuries revealed the powerful nature of the short-barreled shotgun and was thus probative of defendant's gross negligence and recklessness in storing this loaded, deadly weapon in a place that was readily accessible to his unsupervised children. Although some of the pictures may appear gruesome, their admission into evidence was useful in establishing the mental state that the prosecutor was required to prove, and gruesomeness alone does not require exclusion. *Unger*, 278 Mich App at 257. In addition, the jury acquitted defendant of the charge of second degree murder, the most serious charge, so it does not appear that the jury made its decision based on an unfair emotional response. Accordingly, the trial court did not abuse its discretion in admitting the photographs into evidence.

## IV. HABITUAL OFFENDER NOTICE

Finally, defendant contends that he is entitled to resentencing because the prosecutor failed to file a proof of service of the fourth habitual offender notice; defendant also suggests that he was not properly served with the notice. We disagree. This issue is reviewed de novo as a question of law because it involves the interpretation and application of statutory provisions and court rules. See *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017); *People v Hornsby*, 251 Mich App 462, 469; 650 NW2d 700 (2002). Unambiguous language in a statute or court rule is enforced as written. *Comer*, 500 Mich at 287.

MCL 769.13 provides, in relevant part:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

Likewise, MCR 6.112(F) provides:

A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or eliminated as allowed under MCR 6.113(E), within 21 days after the filing of the information charging the underlying offense.

The purpose of the notice requirement " 'is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense.' " *People v Morales*, 240 Mich App 571, 582; 618 NW2d 10 (2000) (citation omitted). The failure to file a proof of service of the notice of intent to enhance the defendant's sentence may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual offender notification. *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999).

In this case, defendant is correct that the prosecutor failed to file a proof of service of the notice of intent to enhance defendant's sentence. However, the error is harmless because defendant had actual notice of the prosecutor's intent to seek an enhanced sentence and defendant was not prejudiced in his ability to respond to the habitual offender notification.

In particular, the charging documents in the lower court file all apprised defendant of his fourth habitual offender status. Although defendant vaguely asserts that the habitual offender notice was not properly "served" on defendant or defense counsel, defendant does not specify what he means by this. Defendant does not claim that he and defense counsel never received a copy of the charging documents. Moreover, defendant received actual notice on the record at the preliminary examination that he was being charged as a fourth habitual offender. At the arraignment on the information, defendant waived a formal reading of the information, as permitted by MCR 6.113(B). There was no indication at the arraignment hearing that defendant or his attorney had not received a copy of the felony information. Indeed, MCR 6.113(B) required the prosecutor to give defendant a copy of the felony information, which in this case included the habitual offender notice. Defendant does not assert that the prosecutor failed to comply with that provision. Because defendant had access to the charging documents, he had notice of the charges against him, including the habitual offender enhancement, and he also was informed of the habitual offender enhancement at the preliminary examination.

The conclusion that defendant was not prejudiced and that he received actual notice of the habitual offender enhancement is further supported by the fact that defendant and defense counsel exhibited no surprise at sentencing when defendant was sentenced as a fourth habitual offender. Also, the fact that the prosecutor was seeking to enhance defendant's sentence as a fourth habitual offender was acknowledged on the record by defendant and defense counsel at a pretrial hearing during the discussion of the prosecutor's final plea offer. Defendant has not asserted below or on appeal that he had any viable challenge to his fourth habitual offender status. On the facts of this case, the prosecutor's failure to file a proof of service constituted a harmless error that does not require resentencing.

Defendant notes that the original felony information in the lower court file was unsigned. However, the complaint, which also contained the fourth habitual offender enhancement notice and which is in the lower court file, was signed, and an amended felony information containing the fourth habitual offender enhancement notice that was filed shortly before trial was signed. Although a prosecutor must sign the felony information, see MCR 6.112(D), the court rule does not state that the prosecutor must sign the habitual offender notice, see MCR 6.112(F). Moreover, defendant does not explain how he was prejudiced by the prosecutor's failure to sign the original felony information. He has thus failed to establish entitlement to resentencing on this basis.

Defendant also asserts that the habitual offender notice did not indicate that defendant would be subject to a 25-year mandatory minimum sentence.[2] Defendant cites no authority establishing that he was entitled to notification of this mandatory minimum sentence. Defendant has thus failed to properly present this aspect of the issue for appellate review. *People v Kelly*, 231 Mich App 627, 640; 588 NW2d 480 (1998). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Id*. at 640-641. The original felony information apprised defendant that he faced a possible sentence of life imprisonment if convicted as a fourth habitual offender, thus conveying the seriousness of the charges he faced. Moreover, defendant was informed before trial that he faced the possibility of a 25-year mandatory minimum sentence. The amended felony information contained the phrase "MANDATORY 25 YEAR SENTENCE" in the fourth habitual offender notice section. Also, at a pretrial hearing in which defendant rejected a plea offer from the prosecutor, defendant was expressly informed on the record that he faced a 25-year mandatory minimum sentence if convicted as a fourth habitual offender. Therefore, although defendant cites no authority

---

[2] See MCL 769.12(1)(a) ("If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years.").

establishing that he was required to be informed of the 25-year mandatory minimum sentence, he in fact was informed of it before trial, including when he chose to reject the prosecutor's final plea offer. As a result, defendant's argument lacks merit.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Jonathan Tukel