*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICHARD NOEL MORIN,

Defendant-Appellant.

UNPUBLISHED
May 20, 2021

No. 347478
Baraga Circuit Court
LC No. 2018-001526-FH

Before: CAMERON, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of first-degree criminal sexual conduct (CSC-I) (fellatio with a victim less than 13), MCL 750.520b(1)(a). Defendant was sentenced to concurrent terms of 25 to 50 years' imprisonment for each CSC-I conviction. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises from defendant's jury trial convictions. At defendant's trial, the victim testified regarding three separate incidents during which defendant, her step-grandfather, made her perform oral sex on him. According to the victim, each of these incidents occurred between the end of 2014 and March 2015, when she was 12 years old. Defendant called four character witnesses, each of whom testified that the allegations against defendant were inconsistent with his character. During the cross-examination of three of these character witnesses—Rachel Morin, Elizabeth Morin, and Tammy Seavoy—the prosecution asked detailed questions regarding whether they had heard reports of other instances of sexual abuse defendant allegedly perpetrated against the victim. The questions about these reports included explicit and sensitive details, such as defendant asking the victim to perform sexual acts on him as depicted in a pornographic video he was watching the night before her eighth birthday; defendant asking the then seven-year-old victim to perform oral sex on him "just to see if [she] like[d] it," and the victim gagging or experiencing pain while performing oral sex on defendant.

Before providing final jury instructions, the trial court discussed the proposed jury instructions with counsel for both parties. Defense counsel did not object to the proposed

instructions or request further instructions regarding the cross-examination of defendant's character witnesses. In relevant part, the trial court instructed the jury that the lawyer's questions to witnesses were not evidence and that the jury should only consider the lawyer's questions "as they give meaning to the witnesses' answers." Regarding the cross-examination of character witnesses specifically, the court instructed the jury as follows:

> You have heard evidence from the -- about the [d]efendant's character for not having sexual contact with minors. You may consider this evidence, together with all the other evidence in the case in deciding whether the [d]efendant committed the crime for which he is charged. Evidence of good character alone may sometimes create a reasonable doubt in your minds and lead you to find the [d]efendant not guilty. **The prosecutor has cross-examined some of the [d]efendant's character witnesses as to whether they had heard anything bad about the [d]efendant. You should consider such cross[-]examination only in deciding whether you believe the character witnesses, and whether they describe the [d]efendant fairly**. (emphasis added)

When asked by the trial court, defense counsel indicated that he had no objections to the jury instructions as read.


## II. ANALYSIS

On appeal, defendant argues that he received ineffective assistance of counsel as a result of defense counsel's failure to request limiting jury instructions regarding the cross-examination of character witnesses during the cross-examination of three of defendant's character witnesses in addition to having the instruction read during final jury instructions. Trial counsel, defendant argues, should have requested a limiting instruction at the time the questions were asked rather than wait for the standard instruction provided the jury at the end of proofs. Defendant also asserts that the standard jury instruction given was insufficient considering the inflammatory nature of the prosecutor's questions.

Generally, to preserve a claim of ineffective assistance of counsel for appellate review, a defendant must move in the trial court for a new trial or an evidentiary hearing. *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018). However, this Court recently indicated that a defendant may preserve an ineffective assistance of counsel claim by filing a motion to remand in this Court, regardless of whether this Court grants or denies that motion. *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op at 8, lv pending (where the defendant preserved his claims of ineffective assistance of counsel by filing a motion to remand for an evidentiary hearing in this Court, which this Court subsequently denied). Defendant did not move in the trial court for a new trial or an evidentiary hearing, nor did he file a motion to remand in this Court. This issue is therefore unpreserved.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Smith*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 346044); slip op at 10 (quotation marks and citation omitted). "Findings of

fact are reviewed for clear error, while constitutional determinations are reviewed de novo." *Abcumby-Blair*, ___ Mich App at ___; slip op at 8 (quotation marks and citation omitted). "This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *People v Spaulding*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 348500); slip op at 9.

A defendant claiming ineffective assistance of counsel must demonstrate: "(1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Abcumby-Blair*, ___ Mich App at ___; slip op at 8. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Traver*, 328 Mich App 418, 422; 937 NW2d 398 (2019) (quotation marks and citation omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. (quotation marks and citation omitted). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *Id*. at 422-423 (quotation marks and citation omitted).

Here, defendant makes numerous references to the prosecutor's "lurid details," during their cross-examination, but he does not challenge the reports that the prosecutor read from of the uncharged conduct. Additionally, defendant does not challenge the propriety of the prosecution's cross-examination under the rules of evidence. Likewise, defendant does not challenge defense counsel's failure to object to the specific instances referenced during the cross-examination of the relevant character witnesses. Moreover, although defendant argues that the standard jury instruction regarding the cross-examination of character witnesses was inadequate as applied to this case, he does not actually claim instructional error on the part of the trial court. Rather, defendant's argument on appeal is seemingly limited to whether he received ineffective assistance of counsel as a result of defense counsel's failure to request limiting instructions in response to the questioning, especially, according to defendant, considering the inflammatory nature of the specific instances referenced.

The focus of defendant's assertion is that trial counsel was ineffective because they did not request that the standard instruction be read more than once. And they did not request it be read when defendant now asserts it should have been read—before cross-examination of the character witnesses. Seemingly, reading the standard jury instruction more than once, and at the time defendant claims it should have been read operates to neutralize any of the "lurid details" of defendant's alleged prior acts. However, such an argument is fueled by speculation and as such, cannot form a basis of proof for a finding that defense counsel's actions fell below an objective standard of reasonableness. *Abcumby-Blair*, ___ Mich App at ___; slip op at 8.

Even if this Court were to presume defense counsel's conduct fell below an objective standard of reasonableness, defendant cannot demonstrate that the outcome of the trial would have been different but for counsel's failure to request the limiting instructions. *Abcumby-Blair*, ___ Mich App at ___; slip op at 8. First, the trial court instructed the jury that the questions the lawyers

asked the witnesses were not evidence and should only be considered "as they give meaning to the witnesses' answer." The character witnesses' answers to the relevant questions posed on cross-examination constituted evidence, and Rachel, Elizabeth, and Seavoy largely denied having heard reports of past specific instances of alleged sexual abuse. Although Rachel affirmed having heard that the victim reported defendant asking her to perform oral sex on him when she was seven years old, Rachel otherwise denied having specific knowledge of the prior allegations of abuse. Elizabeth and Seavoy denied hearing any reports of these alleged prior incidents, and Rachel and Elizabeth explicitly maintained their character assessment of defendant after cross-examination.[1] As previously stated, the trial court instructed the jury regarding the cross-examination of character witnesses, stating, in relevant part: "The prosecutor has cross-examined some of the [d]efendant's character witnesses as to whether they had heard anything bad about the [d]efendant. You should consider such cross[-]examination only in deciding whether you believe the character witnesses, and whether they describe the [d]efendant fairly."

"[I]t is well established that jurors are presumed to follow their instructions . . . ." *People v Parrott*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 350380); slip op at 18 (quotation marks and citation omitted). Accordingly, the jurors here can be presumed to have not considered the prosecution's questions during the cross-examination of the three relevant character witnesses—which included reports of specific instances of sexual abuse perpetrated by defendant against the victim—to be evidence against defendant. The jurors can also be presumed to have only considered the specific instances of alleged prior abuse referenced during the cross-examination of defendant's character witnesses for the proper purposes outlined in the trial court's instruction. Additional limiting instructions therefore would not have altered, in any discernable fashion, the jury's consideration of the cross-examination of the character witnesses or the evidence against defendant.

Additionally, apart from the questions posed to character witnesses, the prosecution presented ample evidence, which, if believed, would lead a reasonable juror to conclude beyond a reasonable doubt that defendant was guilty of the charged offenses. The victim testified in detail regarding defendant sexually assaulting her three times when she was 12 years old. According to the victim, the incidents occurred in three locations: (1) in an isolated area near Powerhouse Falls; (2) at the home of her grandmother, Lori Morin, shared with defendant while Lori was at work; and (3) in an isolated area down Menge Creek Road when she and defendant were driving back from Baraga. After two of these incidents, the victim testified defendant gave her items she considered "rewards" for performing sexual acts on defendant—specifically, $15 and hair clips, respectively. The victim affirmed that she told her mother about some of these incidents, specifically, she wrote her mother a note.

Officer Brian Tienhaara of the L'Anse Village Police Department testified that he interviewed defendant. During the interview, defendant admitted to driving the victim down Menge Creek Road on the way back from Baraga, though his account of the incident did not include any inappropriate behavior between him and the victim. The victim's mother testified that

---

[1] Defense counsel did not inquire of Seavoy whether she maintained her character assessment of defendant after the prosecution cross-examined her.

the victim disclosed the abuse to her upon being asked. The victim wrote her mother a note detailing some of the abuse perpetrated against her by defendant. The note, read aloud by the victim's mother stated:

> He made me give him a blow job for money when [Lori] went to work. He made me do it even when I wanted to done [sic]. He bribed me with the stuff I wanted so he'd get what he wanted. We've done it in the woods over where the power falls are and in [Lori's] house when she was gone.

Based on the totality of the evidence presented at trial, coupled with the trial court's instructions, on this record, we cannot conclude that there is a reasonable probability the jury would have acquitted defendant if defense counsel had requested limiting instructions regarding the cross-examination of relevant character witnesses. *Abcumby-Blair*, ___ Mich App at ___; slip op at 8. Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ James Robert Redford