*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TINA MARIE CARROLL,

      Defendant-Appellant.

UNPUBLISHED
October 01, 2024
3:21 PM

No. 361280
Monroe Circuit Court
LC No. 2020-245897-FH

## ON REMAND

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

This case returns to us on remand from the Supreme Court to determine whether trial counsel's failure to request "detailed legal instructions regarding the applicable law governing the officer's legal authority to act" was " 'representation [that] fell below an objective standard of reasonableness' that prejudiced the defendant." *People v Carroll*, ___ Mich ___, ___; 8 NW3d 576, 576-577 (Docket No. 166092), quoting *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (alteration in original). We affirm.

## I. BACKGROUND

Our prior opinion set forth the underlying facts leading to the criminal charges filed against defendant:

Late in the evening on June 6, 2019, defendant's neighbor was concerned that defendant was experiencing a medical emergency. The neighbor borrowed another neighbor's phone to call 911:

I have . . . my neighbor. Her name is Tina. She was sitting over by my apartment and I was talking to her and she reeks of alcohol. And then all of a sudden when I was walking her home, she was stumbling and she normally doesn't drink. And I got her into her

-1-

house safely. And then all of a sudden she said that she could not see and then she started getting very combative.

Police and medical personnel were dispatched to the apartment complex for a "medical run" for a "female who is not alert." When Corporal Flora and Officer Lamour responded to the scene, they encountered two individuals: defendant and the neighbor who called 911. Both officers were in full uniform, arrived in two fully marked patrol vehicles, and identified themselves when they first encountered defendant. The officers were invited into defendant's apartment. The officers told defendant that they had been dispatched to check on her well-being based on her neighbor's call to 911. Defendant became upset with the neighbor, which prompted Flora to bring the neighbor away from the apartment to obtain information while Lamour remained with defendant in her apartment. The neighbor reported that she believed defendant was having some type of medical emergency such as a diabetic issue, heart attack, or stroke. The neighbor described defendant's speech as slurred and stated that she was not making any sense when she was talking. The neighbor also reported that defendant had been drinking.

When Flora returned to defendant's apartment, defendant was outside on the front porch shared with other residents. She was loud, belligerent, and using profanities as she argued with Lamour and shouted at the medical personnel. She instructed the officers to leave. But the officers explained that they could not leave because there was a call that she was experiencing a possible medical emergency. Lamour described defendant as "belligerent" and stated that he "could tell there was somethin' else going on there, wasn't quite sure, but she was yelling and screaming at us."

One of the paramedics testified that defendant was "not in her right mind" when they arrived and encountered her on the front porch. He stated defendant "was rolling around on the ground, screaming, cussing, just not acting like somebody that you run into every day [sic]." Defendant refused to answer any of the paramedics' questions as they attempted to perform their assessment. Instead, she cussed and responded with "things that were obviously not answers to the questions." Given the facts and circumstances, the paramedics generally would have transported defendant to the hospital for further assessment. But, based on their training, the paramedics opined that defendant was not a danger to herself or others and would not suffer any medical harm if she remained home. Because this was a deviation from protocol, the paramedics contacted a doctor at the hospital to obtain his opinion on whether defendant needed to be evaluated at the hospital. The paramedics did not indicate to the officers that they did not think that defendant was suffering from a medical issue; they simply indicated that they were waiting to speak with the doctor to obtain his opinion whether defendant should be transported to the hospital.

While the paramedics were waiting on medical clearance from the doctor, defendant walked back into her apartment. She continued to yell at the officers and instructed them to leave. The officers exited defendant's apartment, but Lamour

kept his foot and a small portion of his lower leg in the doorway to ensure that medical personnel could get into the apartment to render aid if defendant experienced a medical issue. Defendant screamed at Lamour to remove his foot and kicked his lower left leg. Lamour advised defendant she was under arrest for assaulting him. But when the officers attempted to place defendant in custody, she backed herself into a corner in the kitchen and hid her hands behind her back. The officers forcibly grabbed her arms, took her to the kitchen floor, and placed handcuffs on her wrists. After defendant was handcuffed, she continued to struggle with the officers. She refused to stand up and kept going limp. Because defendant would not walk, the two officers had to enlist the assistance of two firemen to get defendant to the patrol vehicle. [*People v Carroll*, unpublished per curiam opinion of the Court of Appeals, issued July 13, 2023 (Docket No. 361280), pp 1-3 (footnotes omitted).]

A jury convicted defendant of two counts of resisting and obstructing a police officer, MCL 750.81d(1), and one count of disturbing the peace, MCL 750.170. For each conviction, defendant was sentenced to three days in jail (time served) and 24 months' probation.

On appeal by delayed leave granted,[1] defendant argued that there was insufficient evidence to support her convictions, that the jury instructions were constitutionally inadequate, and she received ineffective assistance of counsel because counsel did not to seek to correct that error. We affirmed defendant's convictions. *Carroll*, unpub op at 1, 12. Relevant to the issue on remand, we rejected the ineffective-assistance claim on the ground that the challenged instructions were adequate and thus defense counsel's performance regarding those instructions could not have fallen below an objective standard of reasonableness. *Id*. at 11-12.

In lieu of granting leave to appeal, the Supreme Court reversed our holding that the trial court adequately instructed the jury on the offense of resisting and obstructing,[2] and vacated our analysis rejecting the ineffective-assistant challenge "as it relates to the jury instruction for resisting and obstructing a police officer."[3] *Carroll*, ___ Mich at ___; 8 NW3d at 576. The Court remanded the case to us with instructions to consider whether trial counsel's failure to request "detailed legal instructions regarding the applicable law governing the officer's legal authority to act" was " 'representation [that] fell below an objective standard of reasonableness' that prejudiced the defendant." *Id*. at ___; 8 NW3d at 576-577, quoting *Strickland*, 466 US at 688 (alteration in original). In all other respects, the Court denied leave. *Carroll*, ___ Mich at ___; 8 NW3d at 577.

---

[1] *People v Carroll*, unpublished order of the Court of Appeals, entered September 12, 2022 (Docket No. 361280).

[2] Identified as Part III(B) of our prior opinion.

[3] Identified as Part III(D) of our prior opinion.

## II. ANALYSIS

Defendant argues that she was denied effective assistance of counsel because her trial counsel did not seek to correct the constitutionally inadequate jury instructions regarding resisting and obstructing. We disagree.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023), citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *Yeager*, 511 Mich at 487. Generally, we review de novo constitutional questions, while we review the trial court's findings of fact for clear error. *Id*. To preserve a claim of ineffective assistance of counsel, a defendant must raise the issue in a motion for a new trial or a *Ginther*[4] evidentiary hearing filed in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or in a motion to remand for a *Ginther* hearing filed in this Court, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did none of these things and thus our review of this unpreserved issue is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up). We will not second-guess matters of trial strategy or "assess counsel's competence with the benefit of hindsight[,]"*Abcumby-Blair*, 335 Mich App at 237 (cleaned up).

In this case, trial counsel stipulated to the instructions given by the trial court and, after the jury was instructed, trial counsel stated that he did not have any objection to the instructions. This Court has explained that failing to object may be a matter of trial strategy. *People v Unger (On Remand)*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Defendant argues, "Counsel had no legitimate reason to agree to instructions that provided no guidance to the jury for determining the lawfulness of the officers' actions and [defendant]'s resistance, when both officers testified their actions were lawful and reasonable and there was no evidence submitted about the constitution." Defendant vaguely asserts that "an instruction on the legality of the officers' conduct would have caused the jury to conclude that the officers' conduct was unlawful," but defendant fails to offer specific language that that might properly have steered the jury's inquiry into the legality of defendant's arrest and does not make any further argument that the alleged error was outcome-determinative. Even if this Court assumes that trial counsel's failure to object to the jury instructions as given and his failure to request a hypothetical instruction on the lawfulness of the officers' actions were objectively unreasonable, defendant has not persuasively demonstrated that

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different" had the instruction been given. *Yeager*, 511 Mich at 488 (cleaned up).

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Michelle M. Rick