*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 10, 2025
1:38 PM

Plaintiff-Appellant,

v

No. 371945
Wayne Circuit Court
LC No. 24-000699-01-AR

JUWAN MARQUISE-ALEXANDER BROWN,

Defendant-Appellee.

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Juwan Brown, was charged with involuntary manslaughter, MCL 750.321, and misconduct in office, MCL 750.505; *People v Milton*, 257 Mich App 467, 470; 668 NW2d 387 (2003). At the preliminary examination, the district court dismissed the charges. The prosecution appealed the dismissal to the circuit court, which affirmed. The prosecution now appeals that decision by leave granted,[1] arguing that the district court abused its discretion by dismissing the charges because the evidence at the preliminary examination was sufficient to support a determination that there was probable cause to find that Brown committed the charged offenses. For the reasons stated in this opinion, we reverse and remand for reinstatement of the charges against Brown.

## I. BASIC FACTS

On September 1, 2023, security employees at the Garden Bowl, a bar and bowling alley, called the police because Daryl Vance, a 70 year old African American man, was being disruptive and refusing to leave the premises. Before Detroit Police Officer Brown arrived at the business, Vance had been escorted outside by security. Video footage from the business and video and audio footage from Brown's body cam depicted what occurred after Brown arrived. Brown first spoke with a security employee, who explained that Vance claimed to have a gun in his bag. The bag

---

[1] *People v Brown*, unpublished order of the Court of Appeals, entered February 24, 2025 (Docket No. 371945).

was on the railing to the Garden Bowl's patio, and Vance was standing a few feet away from it. The security employee explained that the bag had not been searched. He described Vance as being calm and then "freaking out," threatening to fight all of the security, and trying to "break" back into the business.

With that information in hand, Brown turned his attention to the visibly intoxicated Vance. He was polite at first and identified himself as a police officer. Vance responded by claiming that he was also a police officer. He gathered his bag from the railing and started to walk away. Brown told him that the "kind people" at the Garden Bowl did not want him there and that he had to "go." Vance turned around and walked toward Brown, who poked him in the stomach with the fingers on his right hand and pushed him back a few steps. Vance was upset by the contact. He swore, warned Brown not to touch him, and called Brown a "nigga." Brown responded by telling Vance that there was "no need to walk up on me." As he did so, Vance again approached him and was again poked in the stomach and pushed back. Vance, who was still upset, informed Brown that he was "walking down the sidewalk" when Brown asked him where he was going. He also warned that if Brown "put [his] hand" on him again that he would see "how good" Brown was and he again used a racial slur. Vance placed his bag on a nearby parking meter and backed a few feet away from Brown.

Brown advised Vance that he was not trying to "fight" him, but Vance again approached him. Brown told Vance to take his stuff and leave. Vance responded by swearing and demanding that Brown not tell him what to do. Despite his words, however, he retrieved his bag and started walking down the sidewalk. After a few steps, he complained that the security employees, who he called "white boys," had "coordinated" everything. Brown encouraged Vance to leave and Vance started to do so before one of the security employees stated that he was Korean.

At that point, Vance came back and set his bag on the ground. Brown responded by taunting, "what you want to do?" while drawing his taser and pointing it at Vance. The two men started talking over each other. Vance made comments about Brown putting his hands on him and stating that he would "knock" Brown's "motherfucking jaw." Brown twice threatened to "light" Vance "the fuck up" with the taser, indicating that he would do so instead of putting his hand on Vance. He suggested that Vance "keep fucking walking" because he had been "calm," "fucking calm" with him but that now Vance could "fucking walk" away or he could break Vance's "fucking jaw." Before holstering his taser, he again told Vance to "get the fuck out of here."

Vance did not leave. Instead, with his hands on his hips, he took a few steps toward Brown, who warned that if Vance walked "up on me I'm going to knock you the fuck out." He again pushed Vance, this time making contact with his shoulder and knocking him into a person walking on the sidewalk. Vance looked at the person and then back at Brown. He told Brown that he was at a bus stop. Brown twice told him that he was not and told him to go. Vance turned away from Brown and Brown touched his shoulder, causing him to whip around while saying, "No, no." He again warned that if Brown put his hands on him that he would "knock" him.

At that point, Brown stepped into what appeared to be a fighting stance, lifting both hands, and twice asking "what's up?" Vance responded by twice saying "you wanna do it like that." Brown responded by stepping forward with both of his arms outstretched toward Vance. It appears as if he pushed Vance and, while doing so, Vance's arm made contact with Brown. Vance's hands

were open and empty at the time. Vance seems to have lost his balance and stepped back, raising his hands. Brown then punched Vance's face. Vance fell off the sidewalk and into the street, landing on his back, striking his head, and losing consciousness.

Brown called for a supervisor and EMS for a "guy knocked unconscious." As he was doing so, he used Vance's arm to lift him into a sitting position. When the security employees asked if he needed water, he stated that it was not going to help, snickered, and complained that he now had a "bunch of paperwork." He repeatedly patted Vance and told him to told him to wake up. While waiting for EMS, he also called someone on his cell phone. He told the person on the other end of the line that he had "kinda knocked this old guy out." He explained that he had asked Vance to leave, that Vance wanted to get tough and had "squared up" with him, and he claimed that Vance had "swung at him." He added that he had hit Vance one time and knocked him unconscious. And while laughing a little, stated, "Yeah, I don't think he gon make it." After indicating to the other person that he had already called a supervisor, he lowered Vance back to the street and checked him for a pulse both at the neck and at the wrist. He told a woman that Vance was still breathing and he turned Vance onto his side.

When the supervisor arrived, he asked if Vance was drunk and whether he had ID. Brown indicated that he did not know and explained that he had not looked for ID because he was trying to wake him up. He then stated that he had asked Vance to move "several times," but that Vance had told him, "I'm not moving, you fucking nigger." He also recounted that Vance had warned him that if he touched him again, he would knock him out. When asked, he said he hit Vance on "the chin."

Eventually, EMS arrived and transported Vance to a hospital. Vance did not regain consciousness, and he died several days later. The medical examiner determined that his cause of death was blunt force trauma to the head with complications and that the manner of death was homicide. Brown was charged with involuntary manslaughter and misconduct in office. At the preliminary examination, the video from the business and Brown's body cam was played for the court. In addition, Daniel Baldwin, one of the security employees at the Garden Bowl, testified on behalf of the defense. Baldwin stated that Vance had been unruly at the bar and was escorted outside. When he tried to reenter the business, Baldwin called the police. Baldwin described Vance as "aggressive" and opined that Vance had tried to swing at Brown. After reviewing his initial statement to the police, he stated that Vance did, in fact, hit Brown. He admitted that the video did not show Vance hitting Brown however. He then stated that it had looked "like he was either going to grapple with someone or take a slight swing at him."

The prosecutor requested that Brown be bound over on the charges, noting that Brown was not trying to arrest Vance and had provoked the fight. There was no indication that he was in fear, he never checked the bag for a weapon, and he "enticed" Vance by holstering his taser, "cocking" his arms, and threatening to break Vance's jaw. Moreover, his own words show that he intended to harm Vance given that he stated that he would "break" Vance's "fucking jaw" and knock him out. The defense argued that Brown was acting in self-defense because Vance was "coming at" him and was resisting and obstructing Brown. Further, the defense contended that Brown was "doing a job as a police officer" by swinging back at a man who had swung at him. He maintained that nothing in his actions showed the "depravity, perversion, or taint with a corrupt intent" that was necessary to support the misconduct in office charge.

As indicated above, the district court dismissed the charges and the circuit court affirmed the dismissal. This appeal by leave granted follows.

## II. BIND OVER

### A. STANDARD OF REVIEW

The prosecution argues that the district court erred by dismissing the charges against Brown. The district court's bindover decision is reviewed for an abuse of discretion. *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018). "An abuse of discretion occurs when the district court's decision falls outside the range of principled outcomes." *Id*. (quotation marks and citations omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Grant*, 329 Mich App 626, 634; 944 NW2d 172 (2019). Further, as it pertains to what is shown by the video footage, we owe no deference to the district court, as the district court is in no better position than us to assess the video evidence. *People v Kavanaugh*, 320 Mich App 293, 298; 907 NW2d 845 (2017).

### B. ANALYSIS

"At a preliminary examination, the prosecution must present evidence establishing that the defendant committed the charged offense, and the district court must find that probable cause exists to bind over a defendant for trial." *Fairey*, 325 Mich App at 648-649. "To satisfy this burden, the prosecution must present evidence of each and every element of the charged offense, or enough evidence from which an element may be inferred." *Id*. at 649. "Accordingly, to warrant a bindover, the prosecution must produce evidence that a crime was committed and that probable cause exists to believe that the charged defendant committed it." *Id*. "Probable cause is established if the evidence would persuade a careful and reasonable person to believe in the defendant's guilt." *Id*. Circumstantial evidence alone may be sufficient, "but must nevertheless demonstrate reasonable grounds to suspect the defendant's personal guilt." *Id*. The evidence must be reviewed in the "light most favorable to the prosecution." *Id*. at 650.

Brown correctly notes that when assessing the evidence presented at a preliminary examination, the district court has the right and the duty "to pass judgment not only on the weight and competency of the evidence, but also on the credibility of the witnesses." *People v Anderson*, 501 Mich 175, 184; 912 NW2d 503 (2018) (quotation marks, citation, and alteration omitted). Brown suggests that any "fair reading" of the district court's rationale for dismissing the charges shows that the court had reviewed the video multiple times, was fully aware of its contents, and repeatedly referred to it when making factual findings. He also notes that the court reviewed briefing on the issues and allowed extensive oral argument before making a decision. Brown suggests that, as a result, it would be "nigh impossible" for this Court to conclude that the district court abused its discretion. We disagree. Although the district court is required to assess the weight and competence of the evidence, including the credibility of the witnesses, the *Anderson* Court made clear that "where there is a conflict of evidence, or where there is a reasonable doubt as to [the defendant's] guilt; all such questions should be left for the jury upon trial." *Id*. at 185 (quotation marks and citation omitted). See also *People v Redden*, 290 Mich App 65, 84; 799 NW2d 184 (2010) ("If the evidence conflicts or raises a reasonable doubt concerning the defendant's guilt, the defendant should nevertheless be bound over for trial, at which the trier of

fact can resolve the questions."). Accordingly, it is not dispositive that the district court's decision to dismiss was based upon its findings related to credibility or to the weight and competency of the evidence. Rather, we must also consider whether the evidence in this case conflicts or whether there is reasonable doubt as to whether Brown is guilty. If so, then bindover is warranted and the trial court abused its discretion in dismissing the charges.

The prosecution contends that it produced evidence on all the elements of involuntary manslaughter and that probable cause existed to bind Brown over for trial. Involuntary manslaughter is a "catch-all crime" that includes any homicide that does not constitute murder, voluntary manslaughter, or a lawfully justified or excused homicide. *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018). Here, the evidence that Vance died as a result of Brown knocking him unconscious is unrefuted. Thus, the only element in dispute is whether he had the requisite intent. The *mens rea* of involuntary manslaughter can be established by showing either "gross negligence or an intent to injure." *People v Fredell*, ___ Mich ___; ___ NW3d ___ (December 26, 2024) (Docket No. 164098), slip op at 7-8 (quotation marks and citation omitted).

Here, the district court found that there was no gross negligence. However, the prosecutor's theory was that Brown acted with an intent to injure, not that he was grossly negligent. Accordingly, to the extent that the district court's dismissal decision was premised upon a finding of no gross negligence, it abused its discretion by analyzing the issue under a theory not advanced by the prosecution. Moreover, having viewed the video and audio footage, it is apparent that the prosecutor presented evidence that Brown had the intent to injure Vance when he punched him. Indeed, Brown's own statements in the video's audio indicate such an intent: he directly stated that he was going to break Vance's jaw or knock him out[2] and then he followed that statement up by punching Vance in the head and knocking him unconscious. See *People v Datema*, 448 Mich 585, 608; 533 NW2d 272 (1995) ("[I]f an assault and battery is committed with a specific intent to inflict injury and causes unintended death, the [defendant] may be found guilty of (at least) involuntary manslaughter.").

Brown nevertheless argues that the district court did not abuse its discretion by dismissing the involuntary manslaughter charge because the court found that he was acting in lawful self-defense and had done "everything he was supposed to do as a police officer." Brown briefly recites the jury instructions on self-defense, but he does not explain how his actions qualify as self-defense. Rather than rely solely on the jury instruction, we turn to our Supreme Court's decision in *People v Doss*, 406 Mich 90; 276 NW2d 9 (1979), which considered a claim of self-defense in the context of police activity. The *Doss* Court explained that, in general, officers may use force that is reasonable under the circumstances. *Id*. at 101-102. "[T]he police officer who claims self-

---

[2] The *Doss* Court addressed what constitutes reasonable force for an officer making an arrest, *People v Doss*, 406 Mich 90, 102; 276 NW2d 9 (1979), but that analysis is not relevant here given that there is no evidence that Brown was making an arrest at the time that he punched Vance. Even if Brown had not expressly stated his intent, it is reasonable to infer that when he punched Vance, an older, intoxicated man, in the face, he intended to cause injury. Again, circumstantial evidence may be sufficient to warrant a finding of probable cause. See *Fairey*, 325 Mich App at 649.

defense must have reasonably believed himself to have been in great danger and that his response was necessary to save himself therefrom." *Id*. at 102.[3]

Generally, although evidence in defense may be presented at a preliminary examination, "affirmative defenses should typically be presented and considered at trial." *Redden*, 290 Mich App at 84 (quotation marks and citation omitted). Dismissal based upon an affirmative defense should only be granted when "the defense is complete and there are no conflicting facts regarding the defense." *Id*. Here, the district court seemed to believe that Brown was justified in striking Vance because it found, based upon the video evidence, that Vance struck Brown first. Having reviewed the video footage multiple times, we cannot agree. The video footage shows that Brown initiated all physical contact between the two men. He pushed Vance multiple times. He pulled his taser and threatened to light Vance up. He stepped into a fighting stance and raised his hands. He lunged toward Vance, which initiated what appears to be grappling like contact between the two men. During that tussle, Vance's open hand made contact with Brown's head or upper body, but based upon our review of the video it does not appear that he swung his arm in order to make the contact. Rather, it was more the forward momentum of his body and Brown's body that caused the contact. In contrast, the video clearly shows that Brown pulled his arm back and forcefully punched Vance in the face. It is our view, then, that the video clearly depicts Brown instigating a fist and punching Vance, whereas it only shows Vance making what appears to be incidental contact caused by proximity. Moreover, regardless of whether Vance swung at Brown first, the video—again—clearly shows that he was responding to Brown dropping into a fighting stance, cocking his hands, and threatening to knock him out or break his jaw. It is also noteworthy that there is nothing in the video to suggest that Brown reasonably believed that he was in great danger as a result of Vance making some flailing or grappling contact with him. Considering the foregoing, we conclude that, at a minimum, there is a question of fact as to whether Brown's use of force was reasonable under the facts and circumstances of this case. As such, dismissal is not warranted and Brown should be bound over on the charge of involuntary manslaughter.[4] The district court, therefore, abused its discretion by dismissing the charge.

The prosecution next argues that the district court abused its discretion by dismissing the misconduct in office charge. Misconduct in office is an indictable, common-law offense. *Milton*, 257 Mich App at 470. The elements of misconduct in office are that the defendant "(1) is a public officer, (2) the misconduct occurred in the exercise of the duties of the office or under the color of the office, and (3) is corrupt behavior." *Id*. at 471. "Corruption, as an element of misconduct in office, is used in the sense of depravity, perversion or taint." *Id*. (quotation marks, citation, and

---

[3] Brown did not advise Vance that he would be arrested if he did not leave, nor did he take any actions consistent with making an arrest. It is not, therefore, reasonable to infer that Brown was making an arrest at the time that he struck Vance.

[4] Brown also suggests that his actions were justified because Vance was resisting or obstructing him in violation of MCL 750.81(d). He does not, however, explain how the fact that Vance appears to have been in violation of MCL 750.81(d) warrants a finding of no probable cause on the charge of involuntary manslaughter.

alteration omitted). "[A] corrupt intent can be shown where there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer." *Id.* (quotation marks and citation omitted).

In dismissing the charges, the district court indicated that Brown engaged in legitimate policing activity and suggested that there was nothing else for Brown to do. We disagree. If Brown did not believe that he could handle the situation on his own, he could have requested backup. He did not. Alternatively, if Brown believed Vance had gone too far, he could have arrested him. He did not. Nor did he attempt to do so. Instead, he pulled his taser and threatened to "light [Vance] up," then put his taser away and got into a fighting stance. He then lunged forward, scuffled a moment with Vance, and then knocked him unconscious by punching him. Although Vance had been swearing at him and using racial slurs, and although he had approached Brown while making verbal threats to strike his jaw, Vance never raised his hands in fists. Nor did he ever make any motion to retrieve the weapon that the security employees had suggested might be in his bag. Although he did not comply with lawful commands to leave, he was not advised that he would be arrested, nor was an arrest ever attempted. Instead, Brown escalated the situation by knocking him unconscious and ultimately causing his death. On this record, the prosecution certainly presented sufficient evidence to establish probable cause to bind Brown over on misconduct in office. That a contrary conclusion may be inferred from the evidence is not a reason to dismiss the charges. Instead, when faced with conflicts in the evidence, or doubts as to Brown's guilt, the matter should be left for the jury upon trial. See *Anderson*, 501 Mich at 185.

Reversed and remanded for reinstatement of the charges against Brown. We do not retain jurisdiction.

/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien