*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ZACHERY FRANZ SCHLEMMER,

Defendant-Appellant.

UNPUBLISHED
December 23, 2024
9:00 AM

No. 364956
Saginaw Circuit Court
LC No. 21-047944-FH

Before: BORRELLO, P.J., and MALDONADO and WALLACE, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of making a threat of terrorism, MCL 750.543m, second-degree arson, MCL 750.73, and unlawful possession of a harmful device resulting in property damage, MCL 750.200i(2)(b). The trial court sentenced defendant to serve 10 to 20 years' imprisonment for making a threat of terrorism conviction, 5 to 20 years' imprisonment for second-degree arson, and 5 to 20 years' imprisonment for unlawful possession of a harmful device, to be served concurrently. We affirm.

## I. BACKGROUND

The terrorism conviction is based on threats of violence that defendant made to Sarah Daily and others between June 1, 2020 and December 17, 2020. The vast majority of the threats were communicated by e-mail. Daily and defendant met in 2017 when they were both working for the same company as software designers. After defendant was fired from this job, Daily changed her employment and started working at a small consulting company. In September 2017, defendant began to repeatedly contact Daily to ask for a job with her new company, and the unwanted contacts persisted to the point that Daily blocked his phone number. She also blocked him on GitHub, which she described as "like a digital notebook . . . to store code for software" that can be accessed by other GitHub users. She began communicating with defendant again in the spring of 2018, and he began to persistently ask her to work with him on a new app that he was developing. She again cut off contact with defendant in August 2018.

Defendant renewed contacting Daily in June 2020, when he began sending her hundreds of threatening e-mails day and night. The subject line of the first e-mail thread, which covers e-

mails sent between July 8, 2020 and July 20, 2020, was, "Every one of you and your families are dead." The e-mails, while threatening, were largely nonsensical and often included references to an "agreement" that defendant was pushing; for example, one of the e-mails in the thread read as follows:

> I will be slitting open every one of you and your families throats. You are the worst terror attack in history. Your raped me, you killed my friend, you tortured 60,000 in this state alone. I am tracking down your families now to kill everyone of them before yourselves. You are all dead. The agreement is the only way to save your failed career.

"The agreement,"[1] required Daily and another person to work with defendant "for life," to live with 25 miles of defendant for life, to not retire for 20 years following the execution of the contract, and to complete other nonsensical tasks.

Defendant sent numerous e-mails throughout the period of June 1 to December 17, 2020, threatening to kill Daily's and another person's families. Sometimes defendant tied the death threats to actions he wanted Daily to take. For example, he threatened to kill her if the contract was not signed or if he was not unblocked on GitHub. In some e-mails, defendant spoke of how the families would be killed. For example: "I'll be burning down every one of their houses and slitting open their throats as they run out"; "I will be burning their houses down and slitting their throats as they run out tonight"; and "I will be burning down their homes and slashing open their throats as they run out."

The second-degree arson and unlawful possession of a device causing property damage convictions are based on a December 17, 2020 fire at a home that had been Daily's childhood home. However, at the time of the fire, the house was owned by Timothy Donnellon. Defendant made multiple references to this home's address during the course of his threatening e-mails. Dwight Mayo, who lived across the street, described hearing a loud car drive back and forth down the street and seeing a flash outside his window at approximately 3:30 a.m. Mayo looked out and saw that his neighbors' porch was on fire and observed a gas can on the porch. Mayo knocked on the door to alert his neighbors of the fire, and they escaped safely. Defendant became a suspect on the basis of the threatening e-mails referencing this address. Additionally, an investigation into his cell phone records suggested that defendant had been traveling toward that area around the time of the fire.

Defendant acted *in propria persona* at his trial, but he was assigned standby counsel to assist him if needed. Defendant was convicted as described earlier, and this appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Despite representing himself, defendant argues that he was denied the effective assistance of counsel due to alleged errors by his standby attorney. We disagree.

---

[1] Several different versions were attached to the e-mails.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error, and legal conclusions are reviewed de novo. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich App at 539 (quotation marks, citation, and alteration omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539.

The prosecution cites *People v Kevorkian*, 248 Mich App 373; 639 NW2d 291 (2001) for the proposition that there is a bright-line rule that claims of ineffective assistance of counsel cannot be brought against a standby attorney. In that case, the infamous Dr. Jack Kevorkian confessed during an interview on the CBS program "60 Minutes" to administering a series of lethal injections—with informed consent—to an ALS patient. *Id*. at 375. Dr. Kevorkian then represented himself at a trial, which he used as a forum to advocate for his views on euthanasia, but he then raised an ineffective assistance of counsel claim against his standby counsel. *Id*. at 375, 406. This Court explained that access to standby counsel can be described "as a matter of grace, but not as a matter of right." *Id*. at 422. Two constitutional guarantees have been recognized in connection with standby counsel. First, a self-represented defendant "is entitled to maintain actual control over the case . . . ." *Id*. at 424. Second, standby counsel cannot "alter[] the jury's perception that the defendant is representing himself." *Id*. Accordingly, this Court rejected defendant's suggestion that, "in light of his own inadequacies in representing himself at trial, [defense counsel] should have done *more* to help him." *Id*. at 424. "With no constitutional right to an attorney, a defendant proceeding *in propria persona* has no basis to claim that the attorney must abide by constitutional standards." *Id*.

Against this legal backdrop, we will now examine defendant's two arguments regarding his standby counsel.

A. DISCOVERY ISSUE

At defendant's trial, the prosecution played 10 voicemails that defendant allegedly left on Daily's phone, each of which was less than 30 seconds long. These voicemails were not played at the preliminary examination, defendant did not know that they were going to be presented until four days before trial, and defendant did not have the opportunity to hear them until the morning of the trial when he listened to them outside the courtroom. The prosecution never sent the recordings to defendant, who was awaiting trial in jail, but they were provided to his standby counsel approximately one month before the trial. Standby counsel did "accept some of the blame" because he "was neglectful in not finding a way to sooner share those with him." However, he also stated that he "reminded [the prosecution] in reply that [defendant] represents himself and that discovery should be provided to him . . . directly." The prosecutor never claimed that he sent the discovery directly to defendant, stating only that he had "no explanation as to why standby counsel did not provide" the recordings to defendant sooner.

It is clear that defendant should have been given these recordings sooner. However, any assistance from his standby counsel was "a matter of grace," not "a matter of right." *Kevorkian*, 248 Mich App at 422. Therefore, defendant did not have a right to receive this material from his standby counsel. The error here was made by the prosecutor, who should have sent the discovery directly to defendant rather than his standby counsel. Defendant moved to exclude these recording from evidence on the basis of the late disclosure, but this motion was denied by the trial court. On appeal, defendant does not argue that the trial court erred by admitting the evidence, only that his standby counsel erred by not making sure he received it sooner.[2] Because defendant had no constitutional right to receive this material from his standby counsel, he has no basis for asserting an ineffective assistance of counsel claim.

## B. DIRECTED VERDICT

At the close of the prosecution's case-in-chief, standby counsel moved for a directed verdict of acquittal with respect to the threats of terrorism charge. While arguing this motion, standby counsel conceded that the evidence was sufficient to prove stalking, but he argued that it was not sufficient to support the type of threats necessary for the terrorism-based charge. Assuming arguendo that this constituted a concession of guilt to stalking, a crime with which defendant was not charged, this could have violated defendant's right to maintain control over his case if he had conceded guilt while arguing to the jury. See *Kevorkian*, 248 Mich App at 424. However, these arguments were made outside the presence of the jury. Therefore, the arguments could not have altered the jury's perception that defendant maintained complete innocence, and the arguments could not have had any impact on the jury's deliberations. Further, standby counsel did not concede guilt to anything; rather, he commented on whether the evidence was legally sufficient to support a crime with which defendant was not charged. Acknowledging that evidence is legally sufficient to create a jury question regarding a hypothetical charge is a far cry from conceding guilt. Therefore, this argument is without merit.

In sum, defendant has failed to establish a valid claim for ineffective assistance of counsel because he had no right to obtain discovery from his standby counsel, because standby counsel did not concede guilt to any crimes, and the alleged concession of guilt did not take place in front of the jury.

---

[2] Even if defendant had directly based his appellate challenge on the prosecution's failure to timely provide defendant with these voicemails, he still would not have prevailed because he has put forth no basis upon which to conclude that timely receipt of these voicemails would have impacted the proceedings. "[A] preserved, nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009); see also MCL 769.26. Rather than a Constitutional violation, this case involves a violation of MCR 6.201(B)(3).

## II. JURY VOIR DIRE

Defendant's argument that he was not allowed to question everybody who was ultimately seated on his jury is without merit because it is inconsistent with the record.

In this case, the trial court used a somewhat unusual process for empaneling the jury. There was an initial pool of 28 jurors and, as would ordinarily happen, an initial jury was seated. However, the court, prosecutor, and defendant then proceeded to question the entire jury pool instead of only questioning those who were selected for the initial panel. At this time, defendant did conduct voir dire with the entire jury pool, including every juror who was ultimately seated. At voir dire's conclusion, the parties were asked if they would be making any for-cause challenges. After consultation with his standby counsel, defendant indicated that he would not make any challenges for cause. The parties then alternated peremptory challenges, with a new juror seated before each successive challenge. After all peremptory challenges were exhausted, the remaining unseated jurors were excused. It is true that defendant did not have another opportunity to question prospective jurors who were seated following the peremptory challenges. However, he did question each of these jurors prior to start of the challenge process, and he also indicated that he would not bring any challenges for cause. Therefore, this argument is without merit.

## III. PROSECUTORIAL MISCONDUCT

Defendant argues that he was deprived of his right to a fair trial because the prosecution improperly referenced other-acts evidence in contravention of the court's pretrial ruling. We disagree.

Claims of prosecutorial misconduct are preserved by making a contemporaneous objection and requesting curative jury instructions. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). Because defendant did not do so, this issue is unpreserved.[3] Unpreserved claims of prosecutorial misconduct are reviewed for plain error. *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020). A plain error occurs if three requirements are "met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). Even if the three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings

---

[3] Standby counsel did raise an issue regarding the prosecutor's opening statement after both the prosecutor and defendant concluded their opening statements. Specifically, counsel took issue with statements made regarding defendant's actions prior to June 1, 2020. Counsel stated that the amended felony information identified "a pretty specific time frame" for the terrorism charge. Counsel asserted that the prosecutor's opening statement "makes it clear he intends to present evidence of and argue other acts preceding that time frame." However, counsel did not assert that the prosecution violated a pretrial order, nor did he request a curative instruction.

independent of the defendant's innocence." *Id*. at 763 (quotation marks, citation, and alteration omitted). Unpreserved claims of prosecutorial misconduct will not warrant reversal unless a curative instruction would have been insufficient to alleviate the harm caused by the misconduct. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Prosecutorial misconduct claims are reviewed on a case-by-case basis. *Mullins*, 322 Mich App at 151. "The test for prosecutorial misconduct is whether the defendant was deprived of a fair trial." *People v Orlewicz*, 293 Mich App 96, 106; 809 NW2d 194 (2011).

The record does not support defendant's assertion that the prosecution violated a pretrial order. Immediately prior to the start of trial, defendant brought a "motion in limine" to "prevent other acts evidence" by barring the prosecution from making any "mention of seeking charges or a PPO" relating to conduct taking place prior to June 2020. In response, the court said, "I'm going to rule that [Daily] cannot—and you will instruct her and you will not elicit anything concerning a PPO [personal protective order] that was sought or obtained." In other words, the court held that any PPO pertaining to Daily and defendant was off-limits. During his opening statement, the prosecutor said that "this story began in early 2017," and he then described conduct predating the charged offenses that occurred through 2017, 2018, and 2019. However, he did not make any references to a PPO, so he did not violate the court's order. Standby counsel then noted—outside the presence of the jury—that the prosecution discussed other acts evidence during his opening statement, and standby counsel asked the court to consider "*expanding* its ruling" to exclude any evidence pertaining to those time periods. In response, the prosecution moved to amend the information to include that time period.[4] This motion was denied, and the court decided not to allow evidence of "any bad acts prior to June 1, 2020."[5] There is no indication that the prosecution violated this ruling. Further, the jury was instructed that its verdict needed to be based on the evidence and that none of the attorneys' statements were evidence. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235.

In sum, defendant has failed to establish prosecutorial misconduct.

IV. EVIDENTIARY CHALLENGE

Defendant argues that an e-mail that was admitted into evidence was not properly authenticated. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Defendant objected to admission of the e-mail, which he described as "a forward of a forward," on the basis of MRE 1002, also known as

---

[4] The prosecution could not admit evidence of prior bad acts because it did not timely file a notice of intent as required by MRE 404(b)(3).

[5] The court stated that this decision was "consistent with my ruling this morning" and chastised the prosecution for making these statements "after I ruled on that this morning." However, as detailed earlier, the court's ruling on the motion in limine did not bar any reference to the 2017 through 2019 conduct.

the best evidence rule. However, the best evidence rule is not the basis of defendant's appellate argument. Because defendant does not cite MRE 1002 on appeal, this issue is not preserved. See *id*. Unpreserved evidentiary challenges are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Detective David Danielson testified about a June 11, 2020, e-mail that was purportedly sent by defendant to the city of Frankenmuth. In this e-mail, defendant accused Daily's parents of "aiding and abetting a terrorist attack," accused Daily and three others of committing a terrorist attack, and provided contact information for each of them. Defendant has wholly failed to put forth authority supporting his contention that this e-mail was inadmissible. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Providing an issue with only "cursory treatment constitutes abandonment of the issue." *Id*. Accordingly, review of this argument has been waived.

Regardless, the argument lacks merit. Defendant suggests that "[t]here was inadequate authentication," and this seemingly invokes MRE 901. MRE 901(a) provides that authentication requires "evidence sufficient to support a finding that the item is what its proponent claims it to be." Pursuant to MCR 901(b)(1), evidence can be authenticated via "[t]estimony that an item is what it is claimed to be." The prosecution claimed the evidence at issue here to be an e-mail sent to the city of Frankenmuth by an account with defendant's name. Detective Danielson testified that this e-mail was forwarded to him by a clerk for the city of Frankenmuth and that it had been sent to her by an e-mail account bearing defendant's name. This was sufficient to authenticate the evidence. Defendant cited MRE 1002 when he objected in the trial court, and this argument is likewise without merit. MRE 1002 provides that "[a]n original writing . . . is required in order to prove its content . . . ." MRE 1001(d) provides in relevant part "For electronically-stored information, 'original' means any printout—or other output readable by sight—if it accurately reflects the information." Detective Dailey testified that the exhibit was a printout of an e-mail and that it accurately reflected the information in the e-mail. Therefore, MRE 1002 is satisfied.

In sum, defendant has failed to establish that this e-mail was inadmissible.

## V. DEPARTURE SENTENCE

Defendant argues that the trial court erred by departing from the recommended sentencing guidelines minimum range of 57 to 95 months and imposing a minimum sentence of 120 months for his conviction of making a threat of terrorism. We disagree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). A reasonable sentence is one that is consistent with the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). "This Court reviews the proportionality of a trial court's sentence for an abuse of discretion. A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality . . . ." *People v Lydic*, 335 Mich App 486, 500; 967 NW2d 847 (2021) (quotation marks and citations omitted; ellipsis in *Lydic*).

A sentencing court has the discretion to depart from the guideline's minimum range when the court determines that the recommended range is inconsistent with the principle of proportionality. *Milbourn*, 435 Mich at 657. The principle of proportionality requires that a sentence imposed be proportionate to the seriousness of the offense and the offender. *People v Steanhouse*, 500 Mich 453, 472; 902 NW2d 327 (2017). Factors that a court may consider when fashioning a sentence consistent with the principle include the gravity of the sentencing offense, circumstances not considered or not adequately considered by the guidelines, misconduct committed by a defendant while in custody, and a defendant's rehabilitative potential. *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019).

The trial court concluded that a departure from the sentencing guidelines range was warranted because of the relentlessness with which defendant had terrorized Daily and others with threats of arson and death. The court stated that defendant's voicemails and e-mails evidenced "increasingly alarming and violent threats" being made by defendant. The court underscored the fact that those threats culminated in defendant's traveling to Frankenmuth and placing "an ignited gas can on the porch of" Daily's childhood home. The court noted that the consequences of defendant's act of arson could have been "more catastrophic" had Timothy Donnellon and the other people in the house that night not been alerted to the danger by a neighbor. The court concluded that "[d]efendant's exceptionally egregious actions" were not adequately accounted for by the guidelines. The court concluded that the guidelines did "not adequately reflect the magnitude of harassment and terror the defendant inflicted upon Ms. Daily and others over a prolonged period." The court also concluded that the guidelines did not account for defendant having repeatedly voiced his premeditated intent to kill Daily and her family, as well as other people associated with her. Further, the court noted that defendant had acted on that intent when setting fire to Daily's childhood home.

As established throughout this opinion, the court's detailed and thorough rationale for departing from the guidelines is entirely supported by the record. Defendant cites his lack of a prior criminal history as a potential basis for concluding that his sentence was unduly harsh. The court acknowledged that "defendant lacks a significant criminal history," but the record supports the court's decision not to afford this fact much weight because "this case did not involve an isolated incident of bad judgment by an otherwise law-abiding defendant. Instead, the defendant incessantly terrorized Ms. Daily and many others with repeated threats of death and arson over a prolonged period." Defendant also makes conclusory references to circumstances such as "the nature of the offense [] and the unique characteristics that were not adequately considered by the court and addressed on the record." Regarding the nature of the offense, the court exhausted painstaking efforts to detail why the nature of the offense supported its sentence. Further, defendant does not identify any of the "unique characteristics" that the court allegedly failed to consider.

Defendant relies extensively on *People v Dixon-Bey*, 321 Mich App 490; 909 NW2d 458 (2017). In that case, the defendant was charged with first-degree murder after stabbing her boyfriend to death in her home. *Id*. at 494. At trial, the defendant raised a self-defense claim, and she was ultimately found guilty of second-degree murder. *Id*. at 494. She was sentenced to serve 35 to 70 years' imprisonment despite having a guidelines range of 12 to 20 years. *Id*. at 494, 522. This sentence was vacated when this Court concluded that it violated the principle of

proportionality. *Id*. at 523-524. Simply put, this case is nothing like *Dixon-Bey*. Given the lack of analogous facts, we are not persuaded by defendant's attempts to draw parallels.

In sum, defendant has failed to establish that the trial court erred by departing from the sentencing guidelines.

## VI.  CONCLUSION

In conclusion, defendant has failed to establish any valid claims of error. Defendant was not denied the effective assistance of counsel because the constitutional standards for effective assistance do not apply to standby counsel. Furthermore, standby counsel's comments regarding defendant possibly being guilty of stalking were made outside the presence of the jury. Defendant had the opportunity to question every potential juror and to raise any challenge for cause. The prosecution's opening statement did not run afoul of the court's pretrial order. The e-mail to which defendant took exception was properly authenticated. Finally, the record supported the trial court's departure sentence. Because he has not established any errors, his claim of cumulative error necessarily fails.

Affirmed.

/s/ Stephen L. Borrello
/s/ Allie Greenleaf Maldonado
/s/ Randy J. Wallace