*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRELL LAMAR VANCE,

        Defendant-Appellant.

UNPUBLISHED
December 19, 2025
9:14 AM

No. 369045
Wayne Circuit Court
LC No. 21-006597-02-FC

Before: ACKERMAN, P.J. and BORRELLO, and LETICA, JJ.

PER CURIAM

Defendant appeals as of right his convictions of assault with intent to murder (AWIM), MCL 750.83; armed robbery, MCL 750.529; and two charges of carrying a firearm during commission of a felony (felony-firearm), MCL 750.227b. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

At approximately 3:00 a.m. on June 19, 2021, Julius Williams received a Lyft ride request from an individual identified as "Reggie." Upon his arrival at the designated pickup location in a black SUV, Williams was confronted by two young Black males who threatened him at gunpoint and forcibly removed him from his vehicle. Later that same morning, Tajuan McGee was walking home from work through an unlit and abandoned area when he encountered a black SUV. An armed and masked assailant exited the vehicle, demanded McGee's glasses and paycheck, and subsequently shot him in the right knee and right arm at close range. This encounter lasted approximately five minutes.

Police responded to McGee's call for help and discovered a cell phone at the crime scene. Analysis of the cell phone data revealed that it had been used to request the Lyft ride from Williams for "Reggie" only hours earlier. Additionally, investigators found evidence of two Gmail account logins associated with the defendant's first and last names. Notably, multiple reports of armed robberies involving a black SUV surfaced in the ensuing days.

-1-

On June 23, 2021, law enforcement attempted to stop a vehicle that matched the description of the SUV involved in the previous incidents. The driver fled, leading to a high-speed pursuit, after which law enforcement apprehended the defendant. The vehicle in question was confirmed to match the vehicle identification number (VIN) of Williams's stolen SUV.

Witnesses were summoned to the Detroit Detention Center on June 24, 2021, to participate in photographic and live lineups. During this process, McGee testified that he was informed by police that they had apprehended a suspect related to his case. However, he did not discuss the suspect's identity or appearance with the police at that moment. The officer supervising the lineup indicated that witnesses were kept separate, though he could not verify whether they were in the same waiting room prior to the lineup. McGee maintained that he did not communicate with any of the other witnesses prior to the lineup.

In the presence of legal counsel, law enforcement provided each witness with standardized instructions prior to the lineup. These instructions clarified that the perpetrator may or may not be present, and that witnesses should not feel obligated to make an identification. Of the four witnesses who provided testimony, McGee was the sole individual to identify defendant during the live lineup, stating his choice was based on defendant's physical appearance. Williams expressed doubt during his identification process, describing it as a "look-alike type thing," while the other witnesses, Shawn Jackson and Cristian Cook, did not identify anyone.

After viewing the lineup, each witness was escorted from the facility to prevent any interaction. During the preliminary examination, McGee once again identified defendant as the individual responsible for the robbery and shooting. Defense counsel was given the opportunity to cross-examine McGee regarding his ability to identify the masked assailant, his rationale for identifying the defendant, and his communications with law enforcement. Subsequently, defendant moved to suppress the lineup and any in-court identifications, arguing that the lineup was unduly suggestive and thus required an independent basis for any subsequent identifications.

During the hearing related to the motion, defense counsel had further opportunities to cross-examine both McGee and the supervising officer. At one point, McGee recalled having a conversation with another witness, but the court clarified that the conversation likely took place during the preliminary examination and McGee confirmed that this exchange did not affect his prior identifications. The trial court ultimately found no evidence to support a conclusion that the lineup procedure resulted in a substantial likelihood of misidentification. It concluded that the lineup was not unduly suggestive and deemed both the lineup and pretrial identifications admissible.

The jury acquitted defendant of all charges related to the Williams incident, including carjacking, assault with intent to do great bodily harm, and felony-firearm. However, the jury convicted defendant on all charges pertaining to McGee's case. In his appeal, defendant challenges the identifications made by McGee.

## II. ANALYSIS

This appeal comes before us on defendant's contention that the trial court erred in admitting evidence related to the pretrial identifications made by McGee, which ultimately tarnished his in-

court identifications. Defendant argues that these identifications violated his constitutional right to due process, primarily on the grounds that the identification procedures employed were impermissibly suggestive.

Defendant asserts that during the lineup procedure, McGee was informed by police officers that they "got the guys," which defendant claims led to an unfairly suggestive environment affecting the reliability of McGee's identification. Furthermore, defendant posits that the subsequent in-court identifications made during the preliminary examination and trial should have also been excluded, citing a lack of independent basis to support the reliability of those identifications.

In the alternative, defendant argues that his trial counsel was ineffective for failing to object to the admission of the identification evidence and for not impeaching McGee with his preliminary examination testimony.

A trial court's findings of fact in a suppression hearing are reviewed only for clear error. *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). "The application of the law to those facts is a constitutional matter that this Court reviews de novo." *Sammons*, 505 Mich at 41.

Defendant did not raise the issue of ineffective counsel below. Where defendant raises claims of ineffective assistance for the first time on appeal, those claims are unpreserved and review is limited to "mistakes that are apparent from the record." *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018).

Under Article I, Section 17 of the Michigan Constitution, identification procedures must not be "so unnecessarily suggestive" and "conducive to irreparable mistaken identification" as to deny a defendant due process of law. *People v Posey*, 512 Mich 317, 332; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). Also, eyewitness identifications resulting from unduly suggestive identification procedures implicate a defendant's due-process rights under the Fourteenth Amendment, US Const, Am XIV. *Kurylczyk*, 443 Mich at 302. The admissibility of identification evidence depends on whether the procedures used to obtain the identification were sufficiently reliable to be presented to the jury. *Posey*, 512 Mich at 332. Even if the identification process is deemed unnecessarily suggestive, the evidence may still be admissible if there is an independent basis for its reliability. *Id*. at 332. If a pretrial identification was tainted, any subsequent in-court identifications must rest on observations of the suspect other than the lineup identification, i.e., an independent basis, to ensure reliability. *Id*. To prevail on a due-process challenge, "a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302. Mere physical differences between lineup participants and the suspect do not amount to impermissible suggestiveness. *Id*. at 312. Accordingly, a lineup is not impermissibly suggestive when "the defendant's appearance was substantially similar to that of the other participants." *People v McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013). Neither is a lineup tainted when a witness is called in for a lineup and told that police have "possible suspects." *People v Smith*, 108 Mich App 338, 343-344; 310 NW2d 235 (1981). A witness likely infers this point, and that "police stated the obvious hardly can be seen as an inducement of the witness to pick someone

out of the lineup." *Id*. Instead, as the United States Supreme Court recognized, situations in which "the witness is told by the police that they have caught the culprit *after which the defendant is brought before the witness alone or is viewed in jail, [or] the suspect is pointed out before or during a lineup, . . .*" are suggestive. *United States v Wade*, 388 US 218, 233; 87 S Ct 1926; 18 L Ed 2d 1149 (1967) (emphasis added).

Defendant raises four primary challenges to the lineup procedure. Specifically, defendant contends: (1) it was improper for the police to inform McGee that they "had the guys" prior to the lineup, (2) that "the witnesses spoke before the identification," (3) that law enforcement "indicated to [McGee] that the perpetrator was in both lineups...and pointed him out by name," and (4) that McGee's identification of defendant was solely based on defendant's physical appearance as being "skinny," a rationale defendant deems insufficient.

At the outset of our analysis, we note that an attorney was present during the lineup to safeguard its fairness. We also note that the attorney who was present was not questioned as to what the police may or may not have told McGee, or what McGee may or may not have stated during the corporeal lineup.

Turning to defendant's claims of error, defendant argues that it was error for the police to tell McGee that they "had the guys." No officer testified that they ever told McGee they had the guys or that the suspect was in the lineup. Further, as alluded to by the trial court, it could be that McGee presumed "they had the guys" when he was asked to come and view a lineup. As this Court stated in *Smith*, "Whenever a witness is called in for a lineup that witness may infer that the lineup will contain possible suspects. The fact that the police stated the obvious hardly can be seen as an inducement of the witness to pick someone out of the lineup." *Smith*, 108 Mich App at 344. Even if we presume that police told McGee that he "had the guys," the record does not reveal that police signaled to McGee that defendant was the perpetrator. Further, review of the corporeal lineup does not reveal that the lineup was unduly suggestive, that defendant was the only participant in the lineup, or that anyone other than McGee pointed to defendant as the perpetrator. Rather, the record reveals that McGee was instructed that he should not feel obligated to make an identification, as it was entirely possible that the perpetrator was not included in the lineup.

A comprehensive review of the transcript undermines defendant's second and third arguments regarding witness conversation and police commentary concerning defendant's appearance, name, and lineup position. The discussions defendant references were clarified extensively during the evidentiary hearing. Specifically, the record indicates that McGee communicated with witnesses Jackson and Cook at the preliminary examination on August 19, 2021, but McGee denied any interaction with other individuals regarding the robbery during the lineup. Testimony from Detroit Police Department Sergeant Shaun Dunning confirms that McGee and Williams were sequestered and did not have a chance to converse with one another; however, he could not confirm whether they were housed in separate rooms prior to the lineup. Ultimately, as noted by the trial court during the evidentiary hearing, there is no record evidence indicating that McGee engaged in discussions regarding the identity or appearance of the defendant with other witnesses.

Defendant next asserts that law enforcement improperly guided McGee in identifying the suspect during the lineup procedure. This assertion is based on testimony elicited through cross-

examination by co-defendant's counsel during the preliminary examination. Notably, McGee's account exhibits inconsistencies when compared to his later redirect testimony. He stated that he was prompted to identify "those people" present at the live lineup and was informed that one of the perpetrators was in attendance. However, McGee subsequently clarified that he was not explicitly informed of the identities of the perpetrators or any specific details about them; rather, he was merely asked to describe the individual he believed to be the perpetrator.

Additionally, defendant challenges McGee's remark regarding his recognition of the individuals at the preliminary examination "by the pictures," which McGee explained as stemming from his prior experience during the robbery. McGee reaffirmed his identification of defendant as the driver during the live lineup and recognized co-defendant Armond Wodarski in a photographic lineup. It is pertinent to note that the standard police eyewitness instructions, which were read verbatim to McGee, explicitly informed witnesses that a perpetrator may or may not be present in the lineup and stressed that they should not feel compelled to make an identification.

Defendant's arguments, at best, carry minimal weight as they rely on selectively chosen excerpts that fail to present a comprehensive or accurate portrayal of McGee's testimony. Furthermore, defendant contends that the reasoning underpinning McGee's identification is inadequate. While McGee reiterated his identification of defendant as "the main one" who shot him, attributing this identification to his observation of the defendant's physique ("because he's skinny"), such reasoning does not address whether the identification procedure itself was impermissibly suggestive. Instead, this matter pertains to the credibility of the witness, a determination appropriately left to the jury.

In *Kurylczyk*, our Supreme Court rejected the defendant's contention that his more disheveled appearance and differences in facial hair among participants distinguished him, noting:

> Like a photographic lineup, the suggestiveness of a corporeal lineup must be examined in light of the totality of the circumstances. As a general rule, "physical differences between a suspect and other lineup participants do not, in and of themselves, constitute impermissible suggestiveness . . . ." Differences among participants in a lineup:
>
>> "are significant only to the extent they are apparent to the witness and substantially distinguish defendant from the other participants in the line-up . . . ." It is then that there exists a substantial likelihood that the differences among line-up participants, rather than recognition of defendant, was the basis of the witness' identification." [*Kurylczyk*, 443 Mich at 313 (citations omitted).]

The photographic lineup in this case reflects a comparable situation. The image depicts five Black males who exhibit similar age, height, and physical build, with the majority dressed in dark-colored attire and long pants. The photograph's quality presents challenges in discerning the individual hairstyles of the participants; however, they all appear to have short to medium-length hair. The assertion by Williams that this lineup constituted a "look-alike type of thing" further supports the claim that defendant was not uniquely identified based on appearance. See *McDade*, 301 Mich App at 357.

In summary, the trial court properly concluded that the lineup in question was not impermissibly suggestive, thus permitting the admission of identification evidence for the jury's consideration. As a result, it is not necessary for this Court to examine whether an independent basis supports McGee's subsequent in-court identifications.

Defendant also challenges the effectiveness of defendant's representation at trial, asserting trial counsel failed to adequately challenge lineup and in-court identifications of defendant. To be entitled to a new trial on the basis of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). In assessing counsel's performance, courts must defer to counsel's informed strategic choices "if they are based on professional judgment." *Strickland v Washington*, 466 US 668, 681; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Additionally, scrutiny of counsel's decisions should avoid "the distorting effects of hindsight" and aim to "evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

Defendant contends that trial counsel failed to adequately impeach McGee based on his preliminary examination testimony. However, a review of the record belies this assertion. McGee underwent thorough cross-examination concerning his identification across three separate proceedings: the preliminary examination, the evidentiary hearing on defendant's motion to suppress McGee's identification, and the jury trial. Importantly, McGee's testimony demonstrated a significant degree of consistency throughout these stages, which occurred over an extended period. Moreover, trial counsel made a concerted effort to suppress evidence related to the pretrial identifications, although the motion was ultimately denied. Thus, contrary to defendant's assertions regarding the shortcomings of trial counsel's performance, it is evident that counsel made a concerted effort to persuade the trial court to exclude the identification evidence on multiple occasions. Additionally, trial counsel actively challenged McGee's credibility during trial.

Such advocacy reflects an objectively reasonable standard of performance throughout the proceedings, notwithstanding defendant's lack of success. It is well established that mere failure of a defense strategy does not equate to a claim of ineffective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 415; 639 NW2d 291 (2001).

The record clearly reveals that trial counsel put McGee's identification into issue, allowing jurors to weigh McGee's credibility. "It is the province of the jury to determine questions of fact and assess the credibility of witnesses. As the trier of fact, the jury is the final judge of credibility." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) (citation and quotation marks omitted). Thus, defendant's ambiguous claims about an unspecified omission in trial counsel's examinations of McGee was outcome-determinative fails.

Affirmed.

/s/ Matthew S. Ackerman
/s/ Stephen L. Borrello
/s/ Anica Letica